JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Charles Alexander ("Alexander"), appeals his conviction. Finding no merit, we affirm.
 {¶ 2} The Cuyahoga County Grand Jury indicted Alexander for possession of crack cocaine, a violation of R.C. 2925.11, drug trafficking, a violation of R.C. 2925.03, and possession of criminal tools, a violation of R.C. 2923.24. Alexander pled not guilty to the charges, and the matter proceeded to a jury trial where the following evidence was presented.
 {¶ 3} On January 29, 2007, Cleveland police officers John Franko and Timothy Combs were patrolling the area of Berkshire Street and Linn Drive when they noticed a conversion van backing up in the opposite direction of traffic and reversing into a driveway. As the van was backing up, it almost hit another vehicle. The officers pulled in the driveway, facing the van, and initiated a traffic stop for improper backing.
 {¶ 4} Prior to exiting their police cruiser, the officers observed Alexander, who was sitting in the front passenger seat, "jump to the back of the van." As a precaution, the officers approached the van with their guns drawn. Officer Combs approached the driver's side of the van and requested identification from the driver, co-defendant Markel Underwood. Underwood had no identification on him; consequently, Officer Combs placed him in the back of the police car to ascertain the status of his license. *Page 4 
 {¶ 5} Meanwhile, Officer Franko opened the door of the passenger's side of the van, directed Alexander out of the vehicle, and asked him for identification, which Alexander indicated that he did not have. Officer Franko testified that he could smell marijuana in the vehicle. Upon Alexander's exiting the vehicle, Officer Franko patted him down for weapons and discovered a small amount of marijuana in his pocket. Officer Franko placed Alexander in the back of the police car with Underwood.
 {¶ 6} In ascertaining the identity of the driver, Officer Combs discovered that Underwood had a suspended license. Consequently, the officers ordered a tow of the vehicle and proceeded to conduct an inventory of it. In the cup holder closest to the passenger seat, Officer Franko discovered a bag of crack cocaine. He further confiscated $544.40 from Alexander, consisting of twenty-six $20 bills, three $5 bills, and nine $1 bills.
 {¶ 7} Officer Franko testified that both Alexander and Underwood denied ownership of the crack cocaine. He further testified that Alexander indicated to Underwood that he could not "take the rap" for the drugs because he had another "big case" pending, involving drugs.
 {¶ 8} The jury found Alexander guilty on all counts, and the trial court sentenced him to one year in prison for the drug possession and drug trafficking counts and six months for the possession of criminal tools, to be served concurrently. *Page 5 
 {¶ 9} Alexander appeals, raising the following four assignments of error:
 {¶ 10} "I. There was insufficient evidence to convict appellant of the charges.
 {¶ 11} "II. The conviction of appellant is against the manifest weight of the evidence.
 {¶ 12} "III. Appellant was deprived of his right to the effective assistance of counsel.
 {¶ 13} "IV. When the fairness of appellant's trial was seriously prejudiced, the court committed plain error by failing to declare a mistrial or to give a curative instruction on the use of other acts evidence."
 Sufficiency and Manifest Weight of the Evidence {¶ 14} Although they involve different standards of review, we will address Alexander's first and second assignments together because they involve the same evidence, and Alexander relies on the same argument in support of each assignment of error: the state failed to prove he knowingly possessed the drugs found in the vehicle.
 {¶ 15} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a *Page 6 
conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 16} A challenge to the manifest weight of the evidence, however, attacks the credibility of the evidence presented. Thompkins, supra, at 387. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. Id., citing State v. Robinson (1955), 162 Ohio St. 486, 487.
 {¶ 17} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as a "thirteenth juror," and, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Thompkins, supra, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." Id. *Page 7 
 {¶ 18} Alexander was convicted of drug possession under R.C. 2925.11, which provides that "no one shall knowingly obtain, possess, or use a controlled substance." He contends that the state produced insufficient evidence to prove that he knowingly possessed the crack cocaine. He further argues that because the state failed to prove these elements, the corresponding counts for drug trafficking and possession of criminal tools also cannot stand. However, construing the evidence in a light most favorable to the state, we find sufficient evidence in the record for any rational trier of fact to conclude that Alexander had knowledge of and constructively possessed the drugs.
 {¶ 19} R.C. 2925.22(B) defines the mental state of "knowingly" as follows:
 {¶ 20} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 21} The issue of whether a person charged with drug possession knowingly possessed, obtained, or used a controlled substance "is to be determined from all the attendant facts and circumstances available."State v. Teamer (1998), 82 Ohio St.3d 490, 492.
 {¶ 22} R.C. 2925.01(K) defines possession as "*** having control over a thing or substance, but may not be inferred solely from mere access to the thing *Page 8 
or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 23} It is well-settled that possession may be actual or constructive. State v. Haynes (1971), 25 Ohio St.2d 264. To establish constructive possession, the state must demonstrate that the defendant was able to exercise dominion or control over the items, even though the items may not be within the defendant's immediate physical possession.State v. Wolery (1976), 46 Ohio St.2d 316; see, also, State v.Brown, 8th Dist. No. 87932, 2007-Ohio-527, ¶ 7, citing State v.Hankerson (1982), 70 Ohio St.2d 87, syllabus; State v. Messer (1995),107 Ohio App.3d 51, 56. Moreover, this court has repeatedly recognized that readily usable drugs found in very close proximity to a defendant constitutes circumstantial evidence that may support a conclusion that the defendant had constructive possession of such drugs. State v.Trembly (2000), 137 Ohio App.3d 134, 141; State v. Barr (1993),86 Ohio App.3d 227, 248; State v. Pruitt (1984), 18 Ohio App.3d 50.
 {¶ 24} Inherent in a finding of constructive possession is that the defendant was conscious of the item and therefore had knowledge of it. See Hankerson, supra, at 91 ("mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession[;] *** [i]t must also be shown that the person was conscious of the presence of the object"). Further, a person may knowingly possess or control property belonging to another; the *Page 9 
state need not establish ownership to prove constructive possession. SeeState v. Robinson, 8th Dist. No. 90751, 2008-Ohio-5580.
 {¶ 25} Circumstantial evidence alone is sufficient to support a finding of constructive possession. State v. Mason (July 5, 2001), 8th Dist. No. 78606, citing Jenks, supra.
 {¶ 26} Here, Officer Franko discovered a baggy of 2.25 grams of crack cocaine located in the cup holder closest to the front passenger seat, where Alexander had been seated. The crack cocaine was within arm's length to Alexander. Officer Franko further testified that Alexander jumped to the back of the van when the police first pulled the vehicle over. Given that he was not the driver of the vehicle and not subject to any traffic citation, his suspicious act of "fleeing" further suggested his knowledge of the drugs in the cup holder. See State v. Collins, 8th Dist. No. 87248, 2006-Ohio-4375 (recognizing that a defendant's "flight" demonstrates a consciousness of guilt). Finally, the evidence further revealed that Alexander had marijuana in his pocket and $544.40 on his person, consisting of small denominations: twenty-six $20 bills, three $5 bills, and nine $1 bills. Officer Franko specifically testified that drug traffickers generally carry small bills because that is how they are paid by their drug customers. Based on this collective circumstantial evidence, we find that the state demonstrated that Alexander had knowledge and constructively possessed the crack cocaine at the time of his arrest. *Page 10 
 {¶ 27} Given that we find sufficient evidence to support the elements of knowledge and possession, Alexander's attack of the drug trafficking charge on the same grounds, namely, that the state failed to prove knowledge or possession, also fails. See R.C. 2925.03.
 {¶ 28} Next, Alexander argues that there was no underlying criminal offense to support the possession of money as a criminal tool. But having already found that the state established the drug possession and drug trafficking counts, we find no merit to the argument. R.C. 2923.24
provides in pertinent part that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." The state demonstrated that Alexander had $544.40 on his person in small denominations, which under the circumstances, satisfy the elements for a conviction of criminal tools. See State v. Painson, 9th Dist. No. 24164, 2008-Ohio-6623,¶ 8 ("[e]ven money can be a criminal tool if there is evidence that the currency was in small denominations for making change"). Indeed, Officer Franko specifically explained that drug traffickers generally carry small bills.
 {¶ 29} Accordingly, we find sufficient evidence to support the convictions and overrule Alexander's first assignment of error.
 {¶ 30} We likewise find that the convictions are not against the manifest weight of the evidence. In support of this argument, Alexander contends that the convictions should not stand because there was no evidence that he *Page 11 
attempted to hide the drugs, which he claims demonstrates that he obviously did not know or possess the drugs. This argument, however, lacks merit. Indeed, Alexander attempted to separate himself from the drugs by fleeing to the back of the van. Moreover, based on the evidence in the record, which includes Alexander's close proximity to the crack cocaine, money on his person, and suspicious activity, we cannot say that the jury clearly lost its way in convicting Alexander.
 {¶ 31} The second assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 32} In his third assignment of error, Alexander contends that hisSixth Amendment right was violated because his trial counsel was ineffective. Alexander specifically complains that he was denied a fair trial because his trial counsel failed to file a motion to suppress the drugs discovered in the van and sat silently when the state's witnesses improperly testified to his involvement in another drug case.
 {¶ 33} To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. Strickland v.Washington (1984), 466 U.S. 668, 687; State v. Bradley (1989),42 Ohio St.3d 136. Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness.Strickland at 688. When reviewing counsel's performance, this *Page 12 
court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Id. at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. Id. at 694.
Motion to Suppress
 {¶ 34} Alexander contends that his defense counsel should have filed a motion to suppress the drugs seized because the police had no reasonable suspicion to justify a stop of the vehicle. He further argues that the officer's search of him and the vehicle violated his Fourth Amendment rights. We disagree.
 {¶ 35} Failure to file a motion to suppress is not per se ineffective assistance of counsel. State v. Madrigal, 87 Ohio St.3d 378, 389,2000-Ohio-448, quoting Kimmelman v. Morrison (1986), 477 U.S. 365, 384. "Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based upon the record, the motion would have been granted." State v. Kuhn, 9th Dist. No. 05CA008859, 2006-Ohio-4416, at ¶ 11, citing State v. Robinson (1996), 108 Ohio App.3d 428, 433.
 {¶ 36} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. Terry v. Ohio
(1968), 392 U.S. 1. A traffic stop by a law enforcement officer must comply with the *Page 13 Fourth Amendment's reasonableness requirement. Whren v. United States (1996),517 U.S. 806; see, also, State v. Trammer, 8th Dist. No. 85456,2005-Ohio-3852, ¶ 12. "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution." Dayton v. Erickson, 76 Ohio St.3d 3,1996-Ohio-431, syllabus.
 {¶ 37} Based on the record before us, we find that a motion to suppress would have been futile. Contrary to Alexander's contention, the record reveals that the police stopped the van because they observed the van backing up in the opposite direction of traffic and reversing into a driveway, nearly hitting another vehicle. Officer Franko testified that he and his partner pulled into the driveway to initiate a traffic stop. There is no evidence in the record refuting that this traffic violation occurred. The mere fact that the police might have had an ulterior motive in stopping the vehicle is irrelevant. See Whren, supra. Indeed, the United States Supreme Court has "flatly dismissed the idea that an ulterior motive might serve to strip the [police] of their legal justification." Id. at 812. Thus, because the record reveals that the driver of the van committed a traffic violation, the police were justified in stopping the car, regardless of any other motives they may have had. See, e.g., State v. White, 9th Dist. No. 05CA0060,2006-Ohio-2966, ¶ 10; State v. Landers, 10th Dist. No. 07-AP-475, ¶ 14. *Page 14 
 {¶ 38} Further, the officer's decision not to cite for the underlying traffic offense does not in of itself negate the validity of the initial stop. See State v. Fry, 9th Dist. No. 23211, 2007-Ohio-3240,¶ 13-14. Indeed, courts routinely deny suppression motions involving traffic stops where the police ultimately never cited for the underlying traffic offense giving justification for the initial stop. Id.; see, also, State v. Whitfield, 8th Dist. No. 90244, 2008-Ohio-3150; State v.Davis, 12th Dist. No. CA2006-10-024, 2007-Ohio-4360, ¶ 13 ("the stop need not end in a citation or confirmed traffic violation in order for there to have been probable cause to initiate the stop").
 {¶ 39} We further find that the officers' actions following the stop, including the pat-down of the defendant and subsequent inventory search of the vehicle, were justified under the circumstances. First, both officers testified that they smelled marijuana in the car. Thus, apart from the traffic stop, this alone provided sufficient basis to ask Alexander to exit the vehicle. See State v. Farris, 109 Ohio St.3d 519,2006-Ohio-3255 (the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search of a passenger compartment of a motor vehicle); see, also,Maryland v. Wilson (1997), 519 U.S. 408, 415 ("an officer making a traffic stop may order passengers to get out of the car pending completion of the stop"). Next, upon Alexander exiting the vehicle, Officer Franko performed a pat-down as a safety precaution. Given Alexander's suspicious act of jumping to the back
of the van, we find that Officer Franko's concern of a weapon was justified. See Terry, supra, at 24 (an officer is authorized to perform a limited pat-down search for weapons as a safety precaution if there is a reasonable suspicion that the person stopped may be armed and dangerous).
 {¶ 40} Finally, we find that the officers' inventory search of the vehicle was constitutionally valid. Here, the officers testified that they decided to have the van towed after they discovered that Underwood had a suspended driver's license. Both the ordering of the tow and the subsequent inventory search were conducted in accordance with standard police procedures. Thus, the police were authorized to search the interior of the vehicle as part of the inventory. See, e.g., State v.Whitfield, supra, at 12; State v. Bridges, 8th Dist. No. 80171, 2002-Ohio-3771; State v. Cook (2001), 143 Ohio App.3d 386. Accordingly, we find that Alexander's counsel was neither ineffective nor was Alexander prejudiced by his counsel's failure to file a motion to suppress.
Objectionable Testimony
 {¶ 41} Alexander also argues that his trial counsel was ineffective for failing to move for a mistrial or request a curative instruction after the jury heard testimony regarding his prior criminal history. Specifically, he refers to Officer Franko's testimony concerning Alexander's statements in the police car. Officer Franko testified that Alexander told Underwood that he "can't take this. [He] can't catch another rap." Officer Franko asked him what he was talking *Page 15 
about and Alexander replied that he had "another big drug case" pending, which involved "a lot of money, a lot of drugs, and I believe he said some guns, too, that they were arrested — I believe he said the Sixth District vice was watching." Defense counsel then objected to this testimony and the trial court sustained the objection.
 {¶ 42} Officer Combs similarly testified as to Alexander's statements referencing another drug case, testifying that Alexander told Underwood that "he can't go down for this again," *** "[he] can't get arrested for another drug case." Defense counsel did not object to this testimony.
 {¶ 43} Alexander contends that the officers' testimony constituted inadmissible evidence of prior bad acts offered solely to demonstrate that he acted in conformity with his prior behavior and that he was denied a fair trial once the jury heard such evidence. We disagree.
 {¶ 44} Although we recognize that Evid. R. 404(B) specifically prohibits the admission of a defendant's prior crimes for the purpose of proving that the defendant acted in conformity therewith, the foregoing testimony was not offered as evidence of prior bad acts or as hearsay evidence. Instead, we find that the state offered the testimony as an admission against interest by the defendant, which is permissible under Evid. R. 801(D)(2)(a).[1] See, e.g., State v. Walter, *Page 16 
8th Dist. No. 90196, 2008-Ohio-3457; State v. Thrasher, 2d Dist. No. 2004-CA-113, 2006-Ohio-1260; State v. Smith, 8th Dist. No. 79527, 2002-Ohio-2145.
 {¶ 45} Here, the record reveals that Officer Franko read Alexander hisMiranda rights prior to asking him whether he wanted to make a statement. Alexander's subsequent statement to the officers concerning another drug case clearly constitutes an admission. Thus, because this testimony is admissible under Evid. R. 801(D)(2)(a), we find no error in the defense counsel's failure to object or move for a mistrial based on its admission.
 {¶ 46} Finally, we note that the defense counsel properly objected once Officer Franko began speculating as to what Alexander said, i.e., the references to his "belief regarding the "Sixth District" and the "guns," and the trial court properly sustained the objection. Given that the trial court later instructed the jury not to consider any evidence that was stricken based on an objection, we find no error in the defense counsel's choosing not to ask for an additional curative instruction. See State v. Ferguson, 10th Dist. No. 07AP-999, 2008-Ohio-6677, ¶ 66, citing State v. Hester, 10th Dist. No. 02AP-401, 2002-Ohio-6966,¶ 15 (defense counsel's decision to not request a curative instruction may have been a tactical decision to avoid drawing additional attention to the matter).
 {¶ 47} Accordingly, we find no error in defense counsel's failure to request a curative instruction or move for a mistrial; therefore, Alexander has failed to demonstrate that his counsel was ineffective. *Page 17 
 {¶ 48} Further, having found that the testimony was admissible and did not constitute improper evidence of "prior bad acts," we find no merit to Alexander's claim that the trial court should have sua sponte declared a mistrial based on the introduction of such evidence. The third and fourth assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, A.J., and MELODY J. STEWART, J., CONCUR.
[1] Evid. R. 801(D)(2)(a) provides that a statement is not hearsay if "[t]he statement is offered against a party and is (a) his own statement, in either his individual or representative capacity * * *." *Page 1