JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiff-appellant, State of Ohio ("State"), appeals the trial court's decision to grant the motion to suppress filed by defendant-appellee, Efren Odavar ("Odavar"). Finding merit to the appeal, we reverse.
 {¶ 2} In 2006, Odavar was charged with possession of drugs. He filed a motion to suppress, in which he argued that the drug paraphernalia found during the search of his car should be suppressed because the police unlawfully detained him and searched his car. After a full hearing, the trial court granted the motion. The following evidence was adduced at the motion hearing.
 {¶ 3} On May 11, 2006, Odavar was a passenger in his car, which was being driven by his friend, Jessica Holbrook ("Holbrook"). Officer Milligan of the Parma police observed Holbrook driving back and forth between lanes without first using a signal, and he stopped the vehicle. Holbrook pulled into a gas station. When questioned by Officer Milligan, Holbrook denied having any identification with her. The officer "ran" her information and found two outstanding warrants. He escorted Holbrook to the police car to confirm her warrants.
 {¶ 4} Officer Milligan asked Odavar who owned the car. The officer observed that Odavar appeared to be under the influence because his eyes were "barely open" and he seemed "groggy." Odavar told the officer he owned the car and that his license was suspended. *Page 4 
 {¶ 5} Officer Milligan testified that Odavar was told he could leave. Odavar went into the gas station to buy cigarettes. Officer Milligan testified that he decided to tow the car because no one was present who could legally drive Odavar's car and the car was blocking a "couple of lanes" inside the gas station. Detective Kalal explained Parma's towing policy which required that, prior to towing a vehicle, an inventory search is conducted to protect both the owner of the vehicle and the police.
 {¶ 6} During the inventory search, police discovered a crack pipe with residue and charred ends in the center console. Officer Milligan testified that they detained Odavar once they discovered the crack pipe. Officer Milligan further testified that he did not question Odavar at the scene but took him to the police station for further questioning. Neither officer on the scene advised Odavar of his Miranda rights.
 {¶ 7} Detectives Kalal and Monnolly questioned Odavar at the police station regarding the crack pipe. Prior to the interrogation, Detective Monnolly read Odavar his Miranda rights. According to Detective Kalal, Odavar explained that he was in the car with Holbrook. Odavar admitted that he had abused cocaine and crack, that the vehicle was his, and that he had smoked crack cocaine within the last three days.
 {¶ 8} Odavar testified that Holbrook called him to give her a ride and he offered to let her drive his car because his license was suspended. After the police pulled the car over and arrested Holbrook, Odavar admitted that he owned the car. *Page 5 
When asked by the police if he had a license, Odavar testified that he told the police that his license was suspended because he had failed to pay child support.
 {¶ 9} Odavar testified that after he bought his cigarettes, he exited the gas station and was told by the police that he was being taken in for interrogation. He further testified that he did not remember the police ever informing him of his rights. On cross-examination, he testified that he told the police that he used marijuana in the past and that he did not remember what, if anything, the police told him after they said they were taking him to the station for interrogation.
 {¶ 10} The trial court granted the motion to suppress, finding that the officers did not properly inform Odavar of his Miranda rights. In its appeal, the State raises two assignments of error. In the first assignment of error, the State argues that the trial court erred when it granted Odavar's motion to suppress because the crack pipe was found during a lawful inventory search. In the second assignment of error, the State argues that the trial court erred when it suppressed contraband under the theory that Odavar was not properly advised of hisMiranda rights, pursuant to Miranda v. Arizona (1966), 384 U.S. 436,444, 16 L. Ed. 2d 694, 86 S. Ct. 1602.
 {¶ 11} In reviewing a trial court's ruling on a motion to suppress, the reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542;State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. A reviewing court is bound to accept those findings of fact if supported by *Page 6 
competent, credible evidence. See, State v. Curry (1994),95 Ohio App.3d 93, 96, 641 N.E.2d 1172, citing, State v. Schiebel (1990),55 Ohio St.3d 71, 564 N.E.2d 54. The reviewing court, however, must decide de novo whether, as a matter of law, the facts meet the appropriate legal standard. Id., see also, State v. Claytor (1993), 85 Ohio App.3d 623,627, 620 N.E.2d 906.
 {¶ 12} For the following reasons, we agree that the trial court erred in its analysis and reverse its ruling on the motion to suppress.
 Miranda Rights {¶ 13} In the instant case, the trial court decided that the pivotal issue was whether the police gave Odavar Miranda warnings when they decided to detain him. The trial court found that because the officers failed to give Odavar Miranda warnings when they detained him, the seizure of the crack pipe was unlawful. The court further found thatMiranda's protection begins once a person is taken into custody and that it was not enough for the police to advise Odavar of his rights at the police station. Since the testimony revealed that Odavar was not informed of his Miranda rights immediately upon being taken into custody, the trial court granted the motion to suppress the crack pipe.
 {¶ 14} Miranda requirements govern the admissibility of statements obtained by law enforcement agencies during interrogation. Under theFifth Amendment to the United States Constitution, no person "shall be compelled in any criminal case to be a witness against himself[.]"Miranda requires that, before questioning a suspect *Page 7 
in custody, law enforcement officials must inform the suspect: (1) that he or she has the right to remain silent; (2) that his or her statements may be used against him or her at trial; (3) that he or she has the right to have an attorney present during questioning; and (4) that, if he or she cannot afford an attorney, one will be appointed.Miranda, supra at 478-479. Odavar relied on the recent Ohio Supreme Court decision, State v. Farris, 109 Ohio St.3d 519, 2006-Ohio-3255,849 N.E.2d 985, to argue that the crack pipe should be suppressed. The trial court also relied on Farris in deciding that the evidence should be suppressed. In Farris, the Court found that Section 10, Article I of the Ohio Constitution provides greater protection to criminal defendants than the Fifth Amendment so that Ohio's constitutional protection against self-incrimination extends to physical evidence seized as a result of pre-Miranda statements. Thus, any evidence obtained as a result of inadmissible statements is also inadmissible. Id.
 {¶ 15} Importantly, the Farris court stated that "only evidence obtained as the direct result of statements made in custody without the benefit of a Miranda warning should be excluded." Id. at 529. But Odavar never argued, nor did the court find, that the pre-Miranda questions the officer posed to Odavar regarding ownership of the car and the status of his drivers license violated Miranda.[1] More importantly, the *Page 8 
crack pipe was found before Odavar was taken into custody and pursuant to an inventory search, not as a result of statements made in custody without Miranda warnings. The holding in Farris does not allow the trial court to go backward in time to reject or disallow evidence seized before a violation occurs. Simply put, Farris is inapplicable to the instant case, and the trial court was incorrect in its analysis. That being said, we must still determine whether the initial warrantless search of Odavar's car was lawful.
 Inventory Search {¶ 16} An inventory search of a lawfully impounded vehicle is a well-defined exception to the warrant requirement of theFourth Amendment to the United States Constitution. State v. Mesa,87 Ohio St.3d 105, 1999-Ohio-253, 717 N.E.2d 329, citing Colorado v.Bertine (1987), 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed. 2d 739;South Dakota v. Opperman (1976), 428 U.S. 364, 367, 96 S.Ct. 3092,49 L.Ed.2d 1000. This exception permits police to conduct a warrantless search of a vehicle for the purpose of inventorying its contents after the vehicle has been lawfully impounded. State v. Mesa,87 Ohio St.3d 105, 108-109, 1999-Ohio-253, 717 N.E.2d 329. See, also,Opperman, supra. The scope of an automobile inventory search may properly extend to the trunk and glove compartment. State v.Beavers, *Page 9 
Cuyahoga App. No. 88513, 2007-Ohio-2915; State v. Jenkins (July 5, 1990), Cuyahoga App. Nos. 57220 and 57221. The search also may extend to a compartment of the vehicle, such as the console between the front seats. See Mesa, supra at syllabus.
 {¶ 17} In order for an inventory search to be constitutionally valid, it must be "reasonable"; that is, it must be conducted in good faith, not as a pretext for an investigative search, and in accordance with standard police procedures or established routine. State v.Hathman, 65 Ohio St.3d 403, 1992-Ohio-63, 604 N.E.2d 743, paragraph one of the syllabus, citing Opperman, supra, and Bertine, supra.
 {¶ 18} Odavar argues that the police had no right to search his car because he was not driving the vehicle. Odavar concedes that towing the car may have been necessary, but he argues that the additional inventory search was unlawful since the actual driver of his car was arrested for a misdemeanor traffic offense. We find, however, that the reason for Holbrook's arrest has no bearing on this case other than that she was not permitted to drive Odavar's car. Additionally, this court has previously held that it is reasonable to do an inventory search before surrendering a car to a towing company in order to insure the proper accounting of the contents of the car. State v. Bridges, Cuyahoga App. No. 80171, 2002-Ohio-3771; State v. Cook (2001), 143 Ohio App.3d 386,758 N.E.2d 213. Thus, the police were not required to tow the car and then procure a warrant to search the car. *Page 10 
 {¶ 19} We next consider whether the State provided sufficient evidence that the inventory search was conducted pursuant to Parma's standard towing procedures. Although no written procedures were introduced into evidence, testimony regarding standard police procedures is sufficient to show lawful reasons for impoundment. See State v. Semenchuk (1997),122 Ohio App.3d 30, 40, 701 N.E.2d 19, 25-26. Detective Kalal testified regarding the department's towing procedures. He testified that once the decision had been made to tow a vehicle, it was standard procedure for the officers on the scene to inventory the vehicle's contents. He further explained that the passenger compartment and trunk would be inventoried and all contents would be logged onto an inventory form.
 {¶ 20} The testimony of Officer Milligan reveals that the search of Odavar's car was conducted pursuant to Parma's standard procedures. We further find that there is no evidence, other than Odavar's unsupported assertions, that the search was pretextual in nature. Holbrook had been arrested on her outstanding warrants, and Odavar's license was under suspension; thus, there was no one at the scene who could legally drive the car. Moreover, Odavar's car was blocking a portion of private property open to public access. Therefore, we find that the police were justified in towing the car. And because the drug paraphernalia was obtained during the lawful inventory search, we find it was properly seized.
 {¶ 21} The first and second assignments of error are sustained.
 Cross Appeal *Page 11 {¶ 22} In his cross appeal, Odavar argues that "the trial court did not commit error when it held that the arrest of his person and all physical evidence obtained by the [police] against [him] violated the [Fourth] Amendment * * * ."
 {¶ 23} As a procedural matter, we note that App.R. 3(C) provides:
 "(1) Cross appeal required. A person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order or, in the event the judgment or order may be reversed or modified, an interlocutory ruling merged into the judgment or order, shall file a notice of cross appeal within the time allowed by App.R. 4.
 (2) Cross appeal not required. A person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal."
 {¶ 24} Odavar does not seek to change the judgment, but is merely defending the trial court's judgment on a ground other than that relied on by the trial court. Therefore, a cross appeal is not required, but we will address his argument.
 {¶ 25} Odavar again argues that the police exceeded their authority and conducted a search of his car in violation of his Fourth Amendment rights. Odavar first cites State v. Jones, 88 Ohio St.3d 430,2000-Ohio-374, 727 N.E.2d 886, in which the Ohio Supreme Court stated that a person may not be arrested for a minor misdemeanor, and evidence obtained incident to an arrest for a minor misdemeanor is subject to suppression. Not only has Jones been overruled as it relates to theFourth Amendment, we fail to see how it relates to the instant case.[2] Holbrook was *Page 12 
not arrested for a minor misdemeanor but on outstanding warrants, and the police discovered the crack pipe as a result of an inventory search.
 {¶ 26} The other cases cited by Odavar are also inapposite to the instant case because in those cases the incriminating evidence, physical or otherwise, was obtained after an unlawful detention or arrest.[3]
 {¶ 27} As explained above, inventory searches are a well-defined exception to the warrant requirement, and the crack pipe was found during a lawful inventory search of Odavar's vehicle. Thus, hisFourth Amendment rights were not violated.
 {¶ 28} Therefore, Odavar's cross-assignment of error is overruled.
 {¶ 29} Accordingly, this cause is reversed and the case is remanded for proceedings consistent with this opinion.
It is ordered that appellant recover from appellee costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 13 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J., and MELODY J. STEWART, J., CONCUR.
[1] Only custodial interrogation triggers the need forMiranda warnings. State v. Biros, 78 Ohio St.3d 426, 440, 1997-Ohio-204;678 N.E.2d 891, citing Oregon v. Mathiason (1977), 429 U.S. 492, 495,97 S. Ct. 711, 713, 50 L. Ed. 2d 714, 719. Custodial interrogation is "`questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" State v. Roberts (1987), 32 Ohio St.3d 225,226, 513 N.E.2d 720, quoting Miranda, supra at 444. However, persons temporarily detained by police in the course of an investigative stop, including "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process[,]" are not "in custody" for purposes of Miranda and deprived of their constitutional rights. Id. at 477-478.
[2] "[T]o the extent that Jones relies on the Fourth Amendment to the United States Constitution, it is no longer authoritative regarding warrantless arrests for minor misdemeanors." State v. Brown,99 Ohio St.3d 323, 326, 2003-Ohio-3931, 792 N.E.2d 175.
[3] Odavar cites the following cases: State v. Robinette,73 Ohio St.3d 650, 1995-Ohio-162, 653 N.E.2d 695; State v. Robinette,80 Ohio St.3d 234, 1997-Ohio-343, 685 N.E.2d 762; Berkemer v. McCarty (1984)468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. 2d 317. *Page 1