[Cite as *State v. Manso*, 2014-Ohio-1388.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 26727 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| BARRY O. MANSO | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 2012-07-2088 |

DECISION AND JOURNAL ENTRY

Dated: March 31, 2014

CARR, Judge.

{¶1}    Appellant, Barry Manso, appeals the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}    On July 22, 2012, Manso was driving his pickup truck on Work Drive in Akron, Ohio when he was pulled over by police for committing a traffic violation.  During the stop, police discovered crack cocaine on the driver's seat.  Manso was subsequently indicted on one count of possession of cocaine, a felony of the fifth degree.  Manso filed a motion to suppress the evidence discovered as a result of the traffic stop.  After a hearing on October 25, 2012, the trial court denied the motion to suppress.  The matter then proceeded to a jury trial where Manso was found guilty of the sole charge in the indictment.  The trial court sentenced Manso to a twelve-month term of incarceration, which was suspended on the condition that he successfully

complete two years of community control. The trial court also suspended Manso's driver's license for six months.

{¶3} On appeal, Manso raises six assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶4} In his first assignment of error, Manso argues that the trial court erred in denying his motion to suppress. Manso has argued on appeal that there was no legitimate basis to stop his vehicle, and also that there was no justification to remove him from his vehicle. This Court disagrees.

{¶5} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id*., citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706, 707 (4th Dist.1997).

{¶6} The Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution proscribe unreasonable searches and seizures. "'[I]f the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigatory

stop.'" *State v. Campbell*, 9th Dist. Medina No. 05CA0032-M, 2005-Ohio-4361, ¶ 10, citing *State v. Hoder*, 9th Dist. Wayne No. 03CA0042, 2004-Ohio-3083, ¶ 8, quoting *State v. Shook*, 9th Dist. Lorain No. 93CA005716, 1994 WL 263194, *5 (June 15, 1994).

{¶7} In his motion to suppress, Manso argued that there was not a legitimate basis to stop his vehicle. While Manso generally asserted that there was no basis to "initially stop the vehicle in question and further detain him against his will," Manso did not set forth any argument regarding the officer's decision to remove Manso from the vehicle. At the outset of the suppression hearing, defense counsel clarified that the suppression was about "nothing more than [the] reason to stop." Defense counsel further explained that he was only interested in what happened prior to the traffic stop. During closing arguments, Manso argued for the first time that his removal from the vehicle was unlawful. The State attempted to respond, but the trial court intervened and indicated that it would deny the motion based on the sole issue before the court, namely whether the stop was lawful. As Manso did not properly raise the removal issue before the trial court, we will not address that issue in the first instance on appeal. *State v. Smallwood*, 9th Dist. Summit No. 24282, 2009-Ohio-1987, ¶ 11.

{¶8} At the suppression hearing, Officers Jason Belacic and Michael Miles testified that at approximately 2:00 a.m. on July 22, 2012, they were conducting surveillance on a known drug house on Peckham St. in Akron. After approximately five minutes, the officers noticed short term traffic activity at the house. When a man exited the house and entered his vehicle after just a two-minute stay, the officers followed the pickup truck as it drove eastbound on Peckham St. and then turned northbound onto Wildwood Ave. The officers followed the pickup truck for three blocks until it approached the stop sign at the intersection of Wildwood Ave. and Work Dr. Both Officer Belacic and Officer Miles testified that they observed the pickup truck

tap its brakes and turn eastbound onto Work Dr. without stopping at the stop sign. At that point, the officers initiated a traffic stop. In light of the short term traffic activity at the Peckham St. house and Manso's inability to answer basic questions during the stop, Officer Belacic asked Manso to step out of the vehicle so that he could conduct a pat down for weapons. When Manso exited his vehicle, Officer Miles saw a split rock of crack cocaine on the driver's seat.

{¶9} When Manso testified at the suppression hearing, he was asked if he remembered running the stop sign. Manso answered, "I might not have made a complete stop." When asked if he had a specific recollection of the traffic violation, Manso answered, "Yeah, yes, I do. I remember where I stopped or maybe [did] not stop[] good enough." Manso then indicated that it might have been a "California stop[.]" On cross-examination, Manso again acknowledged that while he made an attempt to stop, he might not have made a complete stop. Manso explained that a "California stop" was akin to a "quick stop" where the driver does not make a proper stop.

{¶10} At the conclusion of the hearing, the trial court stated that it found the officers' testimony to be credible. The trial court further found that Manso "basically admitted to the California stop" and that the trial court was familiar with that term. The trial court issued its journal entry denying the motion on November 20, 2012.

{¶11} In this case, both officers testified that they observed Manso fail to stop at a stop sign. Manso himself did not deny that he failed to make a complete stop, and admitted to making a "California stop." Under these circumstances, the trial court correctly determined that the officers were permitted to initiate a stop based on the traffic violation.

{¶12} The first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A FINDING OF GUILT
FOR POSSESSION OF COCAINE.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY NOT GRANTING DEFENSE COUNSEL'S CRIMINAL RULE 29 MOTION.

**{¶13}** In his second and fourth assignments of error, Manso argues that the State did not present sufficient evidence to support his conviction for possession of cocaine. Specifically, Manso argues that the State failed to prove that he had knowledge of the cocaine found in his vehicle. This Court disagrees.

**{¶14}** Manso was convicted of possession of cocaine in violation of R.C. 2925.11(A)/(C)(4), which states, "No person shall knowingly obtain, possess, or use [cocaine]." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶15}** Crim.R. 29(A) provides, in relevant part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

**{¶16}** When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

**{¶17}** A review of the trial transcript reveals that during the early morning hours of July 22, 2012, Officers Jason Belacic and Michael Miles were conducting surveillance on a known drug house located at 927 Peckham St. in Akron. The officers observed a dark-colored pickup truck pull up to the house. The driver exited the pickup truck and entered the house from the side door. Two minutes later the same individual exited the house and jumped into his truck. Officer Belacic testified that this behavior was suspicious because the house was a known drug location, and his training and experience led him to believe that the short stop was indicative that a drug transaction had just occurred. The officers began to pursue the pickup truck in their cruiser. Both officers testified that after a short time, they observed the pickup truck roll a stop sign as it turned onto Work Dr. In light of the traffic violation, the officers initiated a traffic stop. The officers never lost sight of the pickup truck, driven by Manso, after it left the known drug house on Peckham St.

**{¶18}** During the traffic stop, Manso told Officer Belacic that he had been visiting a friend, "Mike." Manso did not know Mike's last name, and he was not certain of the name of the street where Mike resided. When Manso exited the vehicle, Officer Miles testified that he saw "two individual rocks" of crack cocaine "sitting right in the middle of the [] driver's seat." Officer Miles testified that while "two rocks" were discovered on the night of the incident, the crack had been "broken up" by the time it was presented as an exhibit at trial. During the inventory of Manso's vehicle, Officer Miles found a crack pipe above the driver's side visor.

**{¶19}** The evidence presented at trial was sufficient to sustain Manso's conviction for possession of cocaine in violation of R.C. 2925.11(A)/(C)(4). The officers observed Manso

make an extremely brief stop at a known drug house. Officer Belacic testified that in his training and experience, such short term traffic activity at a known drug location can be indicative that a drug transaction has occurred. During the course of the ensuing traffic stop, Officer Miles observed two rocks of crack cocaine in the driver's seat of Manso's vehicle. As the cocaine was found on the driver's seat where Manso was seated, this evidence, when construed in the light most favorable to the State, was sufficient to demonstrate that Manso had knowledge of the cocaine in his possession.

{¶20} Manso's second and fourth assignments of error are overruled.

### ASSIGNMENT OF ERROR III

THE VERDICT OF GUILTY FOR POSSESSION OF DRUGS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} In his third assignment of error, Manso argues that his conviction was against the manifest weight of the evidence. This Court disagrees.

{¶22} Unlike a sufficiency inquiry, a determination of whether a conviction is against the manifest weight of the evidence does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. Summit No. 21654, 2004-Ohio-1422, ¶ 11. Rather,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

> Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id*.

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.

**{¶23}** This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

**{¶24}** In support of his assignment of error, Manso argues that the jury's finding that he had knowledge of the drugs in his vehicle was against the weight of the evidence given that such a small amount of cocaine was found on the driver's seat. Manso further contends that the officers' testimony was not credible because it is extremely unlikely that they would have been able to see such a small amount of cocaine.

**{¶25}** As noted above, Officer Miles testified that he observed "two individual rocks" of crack cocaine on the driver's seat where Manso had been sitting. Officer Miles made this observation only minutes after the officers had observed Manso make a short stop at a known drug house. Officer Miles explained that while the cocaine had been "broken up" by the time it was introduced as an exhibit at trial, the cocaine "was in two rocks" when he saw it during the traffic stop. Officer Belacic testified that on the night of the stop, he saw the crack cocaine after Officer Miles removed it from the vehicle. Officer Belacic described the crack as "two white rocks" that were about the size of a pen tip. Robert Michael Velton also testified on behalf of the State. Mr. Velton is an assistant director for the Ohio Bureau of Criminal Identification and Investigation and also works part-time as a drug chemist for the Akron police department. Mr. Velton tested the substance recovered in Manso's vehicle. Mr. Velton described the substance as a "residue amount" and explained that the sample was "a small amount of white crumb-like substance." Mr. Velton further testified that it was his opinion within a reasonable degree of scientific certainty that the substance recovered in the vehicle tested positive for cocaine.

{¶26} Upon our review of the record, we cannot say this is the exceptional case where the evidence weighs heavily in favor of the defendant. *See Thompkins*, 78 Ohio St.3d at 387. Though just a small amount of crack cocaine was found in the pickup truck, Officer Miles testified that the cocaine was readily visible when Manso stepped out of the vehicle. The State also presented evidence that Manso had made a brief stop at a known drug house minutes before the stop, and that the crack cocaine was located on the seat occupied by Manso just before he was removed from his vehicle. This evidence tends to show that Manso knew he was in possession of cocaine. Moreover, while Manso challenges the credibility of the officers, we note that "[t]his Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witnesses' testimony over the testimony of others." *State v. Brown*, 9th Dist. Wayne No. 11CA0054, 2013-Ohio-2945, ¶ 42, citing *State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. It follows that the jury did not clearly lose its way in concluding that Manso had knowledge of the crack cocaine in his possession during the traffic stop. *See Otten*, 33 Ohio App.3d at 340.

{¶27} The third assignment of error is overruled.

## ASSIGNMENT OF ERROR V

APPELLANT RECEIVED INEFFECTIVE ASSISTANCE FROM HIS TRIAL COUNSEL.

{¶28} In his fifth assignment of error, Manso argues that trial counsel was ineffective. This Court disagrees.

{¶29} In order to prevail on a claim of ineffective assistance of counsel, Manso must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any

claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Thus, a two-prong test is necessary to examine such claims. First, Manso must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland*, 466 U.S. at 687. Second, Manso must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith*, 79 Ohio St.3d at 534.

{¶30} In his merit brief, Manso alludes to the fact that trial counsel did not renew his Crim.R. 29(A) motion at the close of the evidence. This Court will consider a sufficiency argument on appeal despite the fact that trial counsel failed to renew a Crim.R 29 motion at the close of the defendant's case. *State v. Arnold*, 9th Dist. Summit No. 24685, 2009-Ohio-6077, ¶ 5. With respect to the evidence presented in this case, we note that in our resolution of the defendant's second and fourth assignments of error, we determined that the State presented sufficient evidence to sustain a conviction. Therefore, Manso has not demonstrated that he was prejudiced by trial counsel's failure to renew his Crim.R. 29(A) motion.

{¶31} Manso's primary argument in support of his assignment of error is that it is unclear whether defense counsel informed Manso of his Fifth Amendment right against self-incrimination prior to Manso's testifying at trial. We stress that a criminal defendant must demonstrate that trial counsel's performance was deficient in order to prevail on an ineffective assistance claim. *Strickland*, 466 U.S. at 687. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. With respect

to the record in this case, Manso merely asserts in his appellate brief that it was "unclear from the record" whether he was informed of his right against self-incrimination, and that "the record does not state whether he was aware of this right" prior to taking the witness stand. We note that "[t]he fact that counsel did not advise [the defendant] on the record hardly suggests that counsel failed to advise him at all. It is a normal practice for lawyers to advise their clients in private, rather than on the record." *State v. Bays*, 87 Ohio St.3d 15, 27 (1999). Furthermore, a properly licensed Ohio attorney is presumed competent. *State v. Karmasu*, 9th Dist. Summit No. 25210, 2011-Ohio-3253, ¶ 20, citing *State v. Lott*, 51 Ohio St.3d 160, 174 (1990). Thus, absent any affirmative evidence to the contrary, we must presume that trial counsel informed Manso of his Fifth Amendment rights prior to Manso's testifying at trial.

{¶32} The fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

THE TRIAL COURT ABUSED ITS DISCRETION BY NOT ENSURING THAT APPELLANT WAS AWARE OF HIS RIGHT AGAINST SELF-INCRIMINATION AND DETERMINING THAT HE WAS KNOWINGLY AND INTELLIGENTLY WAIVING HIS RIGHT TO REMAIN SILENT BY TESTIFYING.

{¶33} In his final assignment of error, Manso argues that the trial court abused its discretion by not ensuring that Manso was aware of his right to remain silent prior to testifying in his own defense at the suppression hearing and at trial. This Court disagrees.

{¶34} "Generally, the defendant's right to testify is regarded both as a fundamental and a personal right that is waivable only by an accused." *State v. Bey*, 85 Ohio St.3d 487, 499 (1999). The Supreme Court of Ohio has held that "a trial judge is not required to conduct an inquiry with the defendant about the decision whether to testify." *Id*. In reaching this conclusion, the Supreme Court noted that such an inquiry is unnecessary, and arguably could be

harmful to the extent that the inquiry "places the judge between the lawyer and his client and can produce confusion as well as delay." *Id.*, quoting *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir.1991).

{¶35} Here, the trial court was not required to conduct an inquiry into whether Manso was aware of his right against self-incrimination. Moreover, there is nothing in the record to suggest that Manso was not aware of right against self-incrimination or that trial counsel neglected to advise him of his rights. It follows that Manso cannot prevail on his assignment of error.

{¶36} Manso's sixth assignment of error is overruled.

III.

{¶37} Manso's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
CONCURS.

BELFANCE, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶38} I concur in the majority's judgment.

{¶39} With respect to Mr. Manso's first assignment of error, I agree that his motion to suppress was properly denied. Notably, on appeal, Mr. Manso has not challenged the trial court's determination that he was precluded from arguing whether his removal from the vehicle was lawful because the issue was not properly before the trial court. Accordingly, I would overrule his argument pertaining to his alleged unlawful removal from the vehicle on that basis.

{¶40} In Mr. Manso's fourth assignment of error, he asserts that the trial court erred in failing to grant his Crim.R. 29 motion. When reviewing a Crim.R. 29 motion, this Court is limited to examining the sufficiency of the State's evidence. *See State v. Nurse,* 9th Dist. Summit No. 26363, 2013-Ohio-785, ¶ 4. I would conclude Mr. Manso forfeited this argument when his counsel failed to renew the Crim.R. 29 motion. *See State v. Arnold,* 9th Dist. Summit No. 24685, 2009-Ohio-6077, ¶ 5.[1] However, because that forfeiture does not foreclose a

---

[1] At the time *Arnold* was written this Court applied the same standard in reviewing Crim.R. 29 motions and in reviewing the sufficiency of the evidence. *See Arnold* at ¶ 4. That, however, has changed. Currently, when reviewing a Crim.R. 29 motion, this Court examines the

sufficiency challenge, I agree that the merits of his second assignment of error are properly addressed.[2] *See id.*

{¶41} In light of the foregoing, in order to demonstrate prejudice with respect to Mr. Manso's argument that his trial counsel was ineffective for failing to renew the Crim.R. 29 motion, Mr. Manso would have to demonstrate that, even though the totality of the evidence was sufficient, the State's evidence alone was not. *See Nurse* at ¶ 4. Because Mr. Manso has not demonstrated that the State failed to present sufficient evidence during its case-in-chief, he has not shown that he would have succeeded on his Crim.R. 29 motion if his trial counsel had renewed it. Thus, I agree that Mr. Manso's fifth assignment of error is properly overruled.

APPEARANCES:

JAMES W. ARMSTRONG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

---

sufficiency of only the State's evidence. *See Nurse* at ¶ 4. In contrast, when this Court reviews challenges to the sufficiency of the evidence, it considers all of the evidence admitted at trial. *See State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

[2] Moreover, had Mr. Manso only raised a challenge to the denial of his Crim.R. 29 motion (as opposed to both a Crim.R. 29 challenge and a challenge to the sufficiency of the evidence), I would agree that it would be appropriate to treat that argument as a general challenge to the sufficiency of the evidence.